The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Darnell WEARE, Defendant–Appellant.

No. 04CA0333.

Colorado Court of Appeals, Div. II.

Oct. 19, 2006.

John W. Suthers, Attorney General, Paul Koehler, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Lapin & Viorst, P.C., Anthony Viorst, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge VOGT.

Defendant, Darnell Weare, appeals the judgment of conviction entered on a jury verdict finding him guilty of reckless manslaughter, first degree kidnapping, felony murder, and conspiracy to commit first degree murder. We affirm.

According to the prosecution's evidence at trial, defendant believed that the victim, S.B., had stolen a briefcase containing cocaine from the trunk of a car at defendant's used car lot. S.B. denied having done so. Defendant and another man, A.S., discussed abducting S.B. to force him to reveal the location of the drugs. According to A.S., defendant "said if we didn't get the drugs back we might have to kill [S.B.]."

Defendant and A.S. subsequently lured S.B. to an auto detailing facility located at the back of the used car lot, put a wire around S.B.'s neck, and dragged him inside. During the ensuing struggle, S.B. continued to deny that he had taken the drugs. A.S. bound S.B.'s legs and wrists, and defendant placed a rag in S.B.'s mouth and secured it with electrical tape. When the police, who had been monitoring the used car dealership and A.S.'s cell phone calls as part of a drug dealing investigation, arrived at the scene, they found S.B. dead.

The jury convicted defendant of reckless manslaughter, first degree kidnapping, felony murder, and conspiracy to commit first degree murder. The trial court merged the manslaughter and kidnapping convictions into the felony murder conviction. It sentenced defendant to life in prison on the felony murder conviction and a consecutive twenty-year prison term on the conspiracy conviction.

I.

Defendant contends that, because the jury verdicts finding him guilty of kidnapping and conspiracy to commit first degree murder are "legally and logically inconsistent," his kidnapping, conspiracy, and felony murder convictions must be vacated. We disagree.

### A.

■ When a jury returns verdicts convicting a defendant of two crimes, and the existence of an element of one of the crimes negates the existence of a necessary element of the other crime, the verdicts are legally and logically inconsistent and may not be sustained. *People v. Frye,* 898 P.2d 559 (Colo.1995); *People v. Candelaria,* 107 P.3d 1080 (Colo.App.2004)(*cert. granted* Mar. 7, 2005).

To convict defendant of conspiracy to commit first degree premeditated murder, the jury had to find, as relevant here, that he intended to cause the victim's death. *See* §§ 18–2–201(1), 18–3–102(1)(a), C.R.S.2006; *Palmer v. People,* 964 P.2d 524 (Colo.1998) (conspiracy requires that defendant intend specifically to achieve the result of the crime that is the subject of the agreement).

Defendant contends that the jury's verdict finding him guilty of conspiracy is inconsistent with its verdict finding him guilty of first degree kidnapping, because first degree kidnapping requires that the kidnapper intend to release the victim if the victim makes the requested concession or gives up the requested thing of value. We do not agree with defendant that such intent is required to sustain a conviction for first degree kidnapping.

### B.

A person commits first degree kidnapping if, as relevant here, he or she "[e]ntices or persuades any person to go from one place to another" "with the intent thereby to force the victim or any other person to make any concession or give up anything of value in order to secure a release of a person under the offender's actual or apparent control." Section 18–3–301(1)(b), C.R.S.2006.

No Colorado cases have considered whether a conviction for first degree kidnapping requires that the defendant intend to release the victim if the desired concession is obtained. Contrary to defendant's contention, the issue was not decided by the supreme court in *People v. Bridges,* 199 Colo. 520, 612 P.2d 1110 (1980), on which he relies.

In *Bridges,* the defendant had dragged the victim to another location, where he sexually assaulted her. The supreme court reversed his first degree kidnapping conviction because there was no evidence that the victim made, or that the defendant intended to obtain, a concession in order to secure her release; rather, the victim had no choice but to submit as a result of the defendant's use of physical force. In discussing the facts of the case, the supreme court observed that there was "no indication in the record that the defendant intended to release the victim after he took her knapsack containing her wallet." *Bridges, supra,* 199 Colo. at 527, 612 P.2d at 1115. However, we do not interpret that language as imposing an additional, separate intent requirement, beyond the requirement that the defendant intend to force the victim to make a concession or give up a thing of value.

Defendant's additional authorities, *People v. San Emerterio,* 839 P.2d 1161 (Colo.1992), and *People v. Nunez,* 673 P.2d 53 (Colo.App. 1983), cite *Bridges* in discussing the "concession" requirement of first degree kidnapping, but neither case holds that the kidnapper must intend to release the victim upon obtaining the concession.

Nor does the first degree kidnapping statute impose such a requirement.

In construing a statute, our task is to ascertain and give effect to the intent of the General Assembly. To do so, we look first to the language of the statute itself, giving the words their plain and ordinary meaning. *Riley v. People,* 104 P.3d 218 (Colo.2004). We are to avoid constructions that would render a part of the statute meaningless. *People v. Terry,* 791 P.2d 374 (Colo.1990). Additionally, we must presume that the General Assembly intended a reasonable result; therefore, a statutory interpretation will be avoided if it leads to an absurd result. *People v. Moore,* 877 P.2d 840 (Colo.1994).

Defendant's proposed construction of the statute contemplates two intent requirements: (1) an intent to force the victim or any other person to make a concession or give up something of value, and (2) an intent to release the victim upon receiving the concession or the thing of value. The plain

language of the statute does not require such a construction, and accepting it would produce an absurd result, in that kidnappers who never intended to release their victims after ransom was paid or another concession made could not be convicted of first degree kidnapping. Additionally, defendant's proposed construction would in certain circumstances read out of the statute the subsection providing that a person convicted of first degree kidnapping cannot suffer the death penalty "if the person kidnapped was liberated alive prior to the conviction of the kidnapper." Section 18–3–301(2), C.R.S.2006. We agree with the People that § 18–3–301(2) further evidences the General Assembly's intent that persons who kill their victims after obtaining their demanded concession are subject to liability for first degree kidnapping.

Contrary to defendant's construction, we construe the language of § 18–3–301(1)(b) as imposing only a single intent requirement: namely, an intent "to force the victim or any other person to make any concession or give up anything of value in order to secure a release." The phrase "in order to secure a release" simply describes the purpose of the concession the offender must intend to force the victim to make. Such a construction is consistent with the plain language of the statute and with the reasonable result that the General Assembly is presumed to have intended. *See People v. Moore, supra.*

In sum, because first degree kidnapping does not require proof that the kidnapper intended to release the victim upon obtaining the concession sought, the jury verdict convicting defendant of first degree kidnapping is not inconsistent with its verdict finding him guilty of conspiracy to commit first degree murder.

Because we find no inconsistency in the verdicts, we need not address defendant's arguments regarding the appropriate remedy for inconsistent verdicts.

## II.

Defendant further contends that the evidence was insufficient to convict him of first degree kidnapping, either as a separate offense or as the predicate offense to felony murder. However, the sole basis for his contention is that the record contains no evidence showing that he intended to release the victim after extracting from him a concession or any other thing of value. Because we have concluded that proof of such intent was not required, and because the record evidence otherwise amply establishes the elements required to convict defendant of first degree kidnapping, we reject his contention.

## III.

Defendant contends his conviction of first degree kidnapping as a class one felony must be reversed because the information did not reference, and the jury did not find, the "bodily injury" sentence enhancer that elevates first degree kidnapping from a class two to a class one felony. *See* § 18–3–301(2) ("Whoever commits first degree kidnapping is guilty of a class 1 felony if the person kidnapped shall have suffered bodily injury ...."); § 18–3–301(3), C.R.S.2006 ("Whoever commits first degree kidnapping commits a class 2 felony if, prior to his conviction, the person kidnapped was liberated unharmed."). We conclude that this contention is moot.

As noted, the trial court ruled that the kidnapping conviction would merge into the felony murder conviction. Accordingly, no judgment of conviction entered, and no sentence was imposed, on the verdict finding defendant guilty of first degree kidnapping. Further, defendant's felony murder conviction required only that a nonparticipant die during the course of any kidnapping. *See* § 18–3–102(1)(b), C.R.S.2006. It was undisputed that the victim had died, and that fact, together with defendant's kidnapping conviction, sufficed to support the felony murder conviction, regardless of whether the kidnapping was a class one or a class two felony.

Thus, because defendant does not otherwise challenge the sufficiency of the kidnapping charge in the information, and because reduction of defendant's kidnapping conviction from a class one to a class two felony would have no practical effect on his circumstances, his contention is moot. *See Moore v. People,* 925 P.2d 264 (Colo.1996); *People v. Garcia,* 89 P.3d 519 (Colo.App.2004).

## IV.

Finally, defendant contends that, because he detrimentally relied on the district attorney's promise that no intercepted statements by him would be introduced at trial, the subsequent introduction of two such statements at trial requires that he now be allowed to reopen and challenge the admissibility of the intercepted statements. We disagree.

Due process requires enforcement of a governmental promise if an accused has reasonably and detrimentally relied on the promise. *See People v. Romero,* 745 P.2d 1003 (Colo.1987); *Lucero v. Goldberger,* 804 P.2d 206 (Colo.App.1990). To establish detrimental reliance, the accused must show that he or she performed some tangible act, or relinquished some significant right, in reliance upon the promise, and that the act or relinquishment so induced was detrimental to the accused's right to fair treatment and due process. *Lucero v. Goldberger, supra,* 804 P.2d at 210 (no detrimental reliance shown where accused made no inculpatory admissions or concessions in reliance on alleged promise and did not demonstrate that "his position was significantly altered as a result of the promise").

Prior to trial, defendant's counsel and counsel for J.C., another individual who was charged in connection with the death of S.B. and whose case was joined with defendant's for purposes of pretrial proceedings, moved to suppress communications intercepted pursuant to a wiretap. At a hearing on the motions, the district attorney stated that the prosecution would not seek to admit any intercepted statements made by defendant. The trial court declined to suppress the intercepted communications.

At trial, A.S. identified two statements as having been made by defendant. Although defendant did not object to the testimony at trial and did not ask to reopen the suppression hearing, he now asserts that he should be allowed to challenge the admissibility of the intercepted communications because he detrimentally relied on the prosecutor's statement that none of the communications would be attributed to him.

Even assuming this claim involves a potentially enforceable "governmental promise," and even assuming it is reviewable for plain error notwithstanding defendant's failure to raise the claim in the trial court, *but see People v. Salyer,* 80 P.3d 831 (Colo.App. 2003), we find no grounds for granting the requested relief. Defendant has not demonstrated, either in the trial court or on appeal, that he detrimentally relied on the prosecutor's statement.

Defendant does not contend that the intercepted statements themselves were made in reliance on a belief that they would not be admitted at trial. *Cf. People v. Fisher,* 657 P.2d 922 (Colo.1983) (accused who answered questions in reliance on officer's promise that his responses would not be used in any criminal proceeding was entitled to enforcement of promise; thus, videotaped interview would be suppressed). Rather, defendant's claimed detrimental reliance was his counsel's asserted failure to pursue suppression of the intercepted statements after learning that none of the statements would be attributed to him. We are not persuaded.

Although defendant contends that his counsel "made only perfunctory pretrial objections to the wiretap statements" because of the prosecutor's statement, the record establishes that defendant's counsel filed a seventy-two-page "Memorandum of Points and Authorities Re: Wiretap" after the hearing at which the prosecutor's statement was made. Further, although defendant claims his counsel believed that defendant lacked standing to challenge the statements, the trial court did not at any time so rule. Finally, and most significant, defendant did not in the trial court, and does not on appeal, identify any grounds for suppressing the wiretap that were not raised but, had they been raised, would likely have required suppression. Thus, he has not established any grounds for granting the relief he requests.

The judgment of conviction is affirmed.

Judge TAUBMAN and Judge TERRY concur.