COLORADO COURT OF APPEALS                    2016COA174

Court of Appeals No. 13CA2024
Pueblo County District Court No. 13CR286
Honorable Victor I. Reyes, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Johnny G. Delgado,

Defendant-Appellant.

JUDGMENT AND SENTENCE REVERSED
AND CASE REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE FURMAN
Miller and Navarro, JJ., concur

Announced December 1, 2016

Cynthia H. Coffman, Attorney General, Kevin E. McReynolds, Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Douglas K. Wilson, Colorado State Public Defender, Elizabeth Griffin, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     The defendant, Johnny G. Delgado, allegedly beat the victim unconscious and took items from his pockets. At trial, a jury convicted Delgado of robbery and theft from the person of another, which he now appeals.

¶ 2     We are asked to consider whether simultaneous convictions of robbery (requiring a taking by the use of force) and theft from the person of another (requiring a taking *other than* by the use of force) for the same act are legally and logically inconsistent and thus require reversal.

¶ 3     We agree with Delgado that the verdicts were plainly legally and logically inconsistent. And, because inconsistent verdicts do not allow us to decide what the jury found, we also agree that Delgado should receive a new trial. In reaching this conclusion, we disagree with *People v. Beatty*, 80 P.3d 847 (Colo. App. 2003), and *People v. Lee*, 914 P.2d 441 (Colo. App. 1995). We thus reverse the judgment and sentence, and we remand for a new trial.

## I. The Taking

¶ 4     The victim spent an evening at a bar, eventually getting drunk. He left around the time the bar closed. Soon after, though, he returned to the bar and banged on the door, trying to get back

1

inside. Hearing this noise, a bar employee called the police, asking for an officer to check on this person.

¶ 5 The victim eventually gave up and walked away from the bar. As he did so, he saw two men walking toward him, but he turned his back on them. Moments later, he was attacked from behind; someone hit and kicked him until he collapsed on the sidewalk and lost consciousness.

¶ 6 Responding to the bar employee's call, a police officer soon arrived at the bar. He saw Delgado bent over the victim's prone body on the sidewalk, apparently going through the victim's pockets. Then, he saw Delgado stand up, holding items in his hands. This officer was the only eyewitness who testified at trial.

¶ 7 The officer shouted at Delgado to stop, but Delgado took off running, tossing aside the victim's wallet, keys, and phone as he went. Backup officers arrived in time to chase, catch, and arrest Delgado. One officer testified that on arrest, Delgado's hands were injured and bloody.

¶ 8 When the case went to trial, the prosecution argued that Delgado could be convicted of both robbery and theft from the person of another, and the trial court gave instructions on both.

¶ 9 The robbery instruction informed the jury that they could find Delgado guilty if he:

> 3. knowingly,
>
> 4. took anything of value,
>
> 5. from the person or presence of another,
>
> 6. *by the use of force, threats, or intimidation.*

(Emphasis added.). *See* § 18-4-301, C.R.S. 2016.

¶ 10 The theft from the person of another instruction informed the jury that they could find Delgado guilty if he:

> 3. knowingly
>
> a. obtained or exercised control over,
>
> b. anything of value,
>
> c. which was the property of another person,
>
> d. without authorization or by threat or deception, and
>
> 4. with intent to permanently deprive the other person of the use or benefit of the thing of value, and
>
> 5. the thing of value was taken,
>
> a. from the person of another,
>
> b. by means *other than the use of force, threats or intimidation.*

(Emphasis added.). *See* § 18-4-401(1), (5), C.R.S. 2016.

¶ 11    The jury found Delgado guilty of robbery and theft from the person of another, but it did not reach a verdict on an assault count, and that count was dismissed.  Then the trial court sentenced Delgado to twelve years in prison on the robbery count and a concurrent sentence of 200 days on the theft count, with credit for 211 days served.

## II.  Plainly Inconsistent Verdicts

### A.  Standard of Review

¶ 12    Both parties agree that the inconsistent verdict issue is not preserved.  So, review is for plain error.  *People v. Sanchez*, 253 P.3d 1260, 1262-63 (Colo. App. 2010).  An error is plain if it is obvious and "so undermine[s] the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the judgment of conviction."  *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005) (quoting *People v. Sepulveda*, 65 P.3d 1002, 1006 (Colo. 2003)).

¶ 13    We note that Delgado's reliance on a number of cases for the proposition that inconsistent verdicts are structural errors is misplaced because none addressed inconsistent jury verdicts.  *See Sullivan v. Louisiana*, 508 U.S. 275, 277, 281 (1993) (concluding that it is structural error for a court to give an incorrect definition of

4

"reasonable doubt"); *Sanchez v. People*, 2014 CO 29, ¶¶ 14, 20 (concluding that it is structural error for a court to convict a defendant for a crime for which the jury did not find him guilty of every element); *Medina v. People*, 163 P.3d 1136, 1138, 1141 (Colo. 2007) (concluding that it is structural error for a court to sentence a defendant for a crime for which he was not convicted).

## B. Inconsistent Verdict Law

¶ 14 We start our discussion with two Supreme Court cases that involved both an acquittal and a conviction. The Supreme Court determined in *Dunn v. United States*, 284 U.S. 390, 393-94 (1932), that, as a rule, verdicts are not inconsistent when a defendant is acquitted of one crime and convicted of another crime that is inconsistent with the acquittal. It later noted, in *United States v. Powell*, 469 U.S. 57, 65 (1984), that this kind of inconsistent verdict "should not necessarily be interpreted as a windfall to the Government at the defendant's expense," because it is "possible that the jury, convinced of guilt, properly . . . through mistake, compromise, or lenity, arrived at an inconsistent conclusion."

¶ 15    In *People v. Frye*, 898 P.2d 559 (Colo. 1995), our supreme

court explained an exception to the rule from *Dunn* that applies in

Delgado's case:

> [In] those cases where a jury has returned
> verdicts *convicting a defendant of two or more*
> *crimes*, where the existence of an element of
> one of the crimes negates the existence of a
> necessary element of the other crime[,] courts
> are generally uniform in their agreement that
> the verdicts are legally and logically
> inconsistent and should not be sustained.

*Id.* at 569 n.13 (emphasis added); *see People v. Weare*, 155 P.3d

527, 529 (Colo. App. 2006) (applying this exception); *see also*

*Candelaria v. People*, 148 P.3d 178, 183 (Colo. 2006) (citing *Frye*

favorably for this proposition).  Some states refer to such verdicts as

"mutually exclusive" verdicts.  *See State v. Owens*, 766 S.E.2d 66,

71 (Ga. 2014); *Martinez v. State*, 989 So. 2d 1143, 1150 (Ala. Crim.

App. 2006).

¶ 16    When we apply this exception for inconsistent verdicts, we

consider whether an element of one offense negates an essential

element of the other.  *Weare*, 155 P.3d at 529.  And, when deciding

whether elements negate each other, we must compare the

language in the relevant statutes.  *See id.* at 529-30.  In doing so,

we are guided by common rules of statutory interpretation. We must determine the intent of the General Assembly. *Mason v. Adams*, 961 P.2d 540, 543 (Colo. App. 1997). To discern intent, we look to the statutory language, giving words and phrases their plain and ordinary meanings. *Swieckowski v. City of Fort Collins*, 934 P.2d 1380, 1384-85 (Colo. 1997). When we give words their plain meanings, the rule of consistent usage requires that, absent a "manifest indication to the contrary, the meaning attributed to the words or phrases in one part of the statute should be ascribed to the same words or phrases found elsewhere in the statute." *Colo. Common Cause v. Meyer*, 758 P.2d 153, 161 (Colo. 1988); *see United States v. Castleman*, 572 U.S. __, __, 134 S. Ct. 1405, 1417 (2014).

## C. Analysis

¶ 17    We conclude in Delgado's case that (1) the force elements of robbery and theft from the person of another negate each other and, thus, guilty verdicts on both are legally and logically inconsistent; and (2) the error is plain.

## 1. Inconsistent Verdicts

¶ 18    We initially point out that neither party disputes that there was only one taking, nor does any evidence support a finding of more than one taking — for example, there is no evidence that Delgado took objects from the victim, left, and then returned later to take more.  The trial court agreed with this proposition when it stated that "the same evidence" supports both the robbery and theft counts.

¶ 19    Now, we turn to the language of the statutes.  As stated above, the trial court read the robbery and theft instructions to the jury.  On the one hand, robbery requires that a person take "by the use of force."  § 18-4-301(1).  On the other, theft from the person of another requires that a person take "by means other than the use of force."  § 18-4-401(5).

¶ 20    Because these provisions are in the same article of the Colorado statutes, we apply the rule of consistent usage and give the word "force" the same meaning in both parts of the statute.  *See Meyer*, 758 P.2d at 161.  We may do so because the General Assembly has not shown a "manifest indication to the contrary."  *Id.*  Rather, it enacted the theft from the person of another provision "to

8

cover those situations that would otherwise constitute robbery, but for the lack of force, threats, or intimidation," *People v. Warner*, 801 P.2d 1187, 1191 (Colo. 1990) (footnote omitted), thus showing that it contemplated that "force" has the same meaning in both statutes.

¶ 21 And, because the General Assembly intended that both statutes use the same definition of "force," the jury's findings that Delgado both took "by the use of force" and "by means other than the use of force" for the same act negate each other. Thus, the verdicts are legally and logically inconsistent. *See Weare*, 155 P.3d at 529.

## 2. Plain Error

¶ 22 We agree with Delgado that this error is plain because it is obvious and casts serious doubt on the reliability of the conviction. *See Miller*, 113 P.3d at 750.

¶ 23 The error is obvious because the proposition that a defendant may not be convicted on charges that are legally and logically inconsistent is well-established, and such an inconsistency is manifest in this case. *See Weare*, 155 P.3d at 529. It is obvious that taking by "force" is the opposite of taking "by means other than

the use of force." There can be no clearer example of inconsistency. *See Warner*, 801 P.2d at 1191.

¶ 24 And, this error casts serious doubt on the reliability of the convictions because it makes a conviction of both robbery and theft from the person of another for the same act legally impossible.

¶ 25 The People's reliance on *People v. Simpson*, 93 P.3d 551 (Colo. App. 2004), for the proposition that a jury can recognize a temporal distinction between criminal acts is misplaced. In *Simpson*, a division of this court recognized that a defendant can simultaneously intend to menace and take substantial steps toward causing death. *Id.* at 555. This holding has no bearing on whether a defendant can commit one taking both with and without force.

¶ 26 Additionally, the People's reliance on the course of transaction doctrine to contend that "Delgado used force to effectuate a robbery (by beating the victim unconscious) and then physically took [the victim's] property from his pockets without using force" misses the point. *See People v. Fox*, 928 P.2d 820, 821 (Colo. App. 1996) (upholding a conviction for robbery against two victims based on the course of transaction doctrine); *see also People v. Villalobos*, 159 P.3d 624, 627 (Colo. App. 2006). Once the jury actually found that

the taking was accomplished by beating the victim unconscious, the jury could not legally or logically find that the taking was "by means other than the use of force," even if it believed that no force was used to remove items from the unconscious victim's pockets. *See Frye*, 898 P.2d at 565-66 (disapproving of a strained and unpersuasive "speculation into [the] jury's thought processes" to find a way the verdicts could be viewed as consistent).

## III.  Remedy

¶ 27    The People contend that the proper remedy for the inconsistent verdicts is to vacate the theft from the person of another conviction and sentence, which has the lesser punishment, but affirm the robbery conviction and sentence in order to "maximize" the jury's verdict. In support of this, they rely on *Beatty*, 80 P.3d 847, and *Lee*, 914 P.2d 441. We disagree with the People and the other divisions of this court because (1) the cases on which *Beatty* and *Lee* rely for this remedy did not address inconsistent guilty verdicts and (2) inconsistent guilty verdicts express irreconcilable findings that can only be resolved through a new trial. *See People in Interest of S.N-V.*, 300 P.3d 911, 914 (Colo.

11

App. 2011) (stating that one division of the court of appeals is not bound by decision of another division).

A.  *Beatty*, *Lee*, and Their Foundational Cases

¶ 28    The divisions in *Beatty* and *Lee* each concluded that the guilty verdicts involved were legally and logically inconsistent.  *Beatty*, 80 P.3d at 852; *Lee*, 914 P.2d at 446.  We take no issue with this part of either holding.

¶ 29    But, the divisions then concluded that the proper remedy in such situations is to maximize the jury verdicts by vacating the conviction of the lesser offense.  *See Beatty*, 80 P.3d at 853; *Lee*, 914 P.2d at 448.  In reaching this conclusion, the divisions relied on the reasoning of two Colorado Supreme Court cases which concluded that verdicts should be maximized: *People v. Glover*, 893 P.2d 1311, 1314 (Colo. 1995), and *People v. Bartowsheski*, 661 P.2d 235, 246-47 (Colo. 1983).

¶ 30    But, these two foundational cases, *Glover* and *Bartowsheski*, did not involve inconsistent verdicts.  In *Glover*, 893 P.2d at 1314-15, the defendant was convicted on two counts of first degree murder, even though he only committed one murder.  And, in *Bartowsheski*, 661 P.2d at 245, the trial court convicted and

12

sentenced the defendant based on a greater felony murder offense and a lesser included robbery offense. Neither case addressed, nor even mentioned, inconsistent verdicts. Thus, the cases on which *Lee* and *Beatty* relied are not applicable to inconsistent verdicts.

## B. New Trial

¶ 31 Not only are *Glover* and *Bartowsheski* factually inapplicable, but the reasoning underlying them is not persuasive in Delgado's case. In both *Glover* and *Bartowsheski*, the elements of one of the offenses necessarily included the *same* elements as the other, and thus the evidence supported both convictions. In contrast, where verdicts are inconsistent, the evidence supports each conviction individually, but *not both* at the same time because an element in each negates an element in the other.

¶ 32 So, when guilty verdicts are inconsistent, we cannot know what the jury actually found because it expressed irreconcilable findings. *Cf. Milanovich v. United States*, 365 U.S. 551, 555-56 (1961) ("[T]here is no way of knowing [what] a properly instructed jury would have found."). Because the verdicts are so plainly inconsistent, it is not possible to discern the jury's intent.

¶ 33    We thus conclude that the proper remedy when guilty verdicts

are legally and logically inconsistent is to remand for a new trial so

that a jury can make new findings and decide which conviction the

evidence supports.  *See Owens*, 766 S.E.2d at 71 ("[T]he remedy for

a judgment entered on convictions based on mutually exclusive

verdicts is to reverse the judgment, set aside the verdicts at issue,

and remand for a new trial."); *People v. Williams*, 688 N.E.2d 320,

324 (Ill. App. Ct. 1997) ("[T]he convictions must be reversed and the

cause remanded for a new trial on the involuntary manslaughter

and aggravated discharge of a firearm charges."); *State v.*

*Speckman*, 391 S.E.2d 165, 168 (N.C. 1990) ("[T]here is a

'reasonable possibility' that a different result would have been

reached at trial as to both charges . . . .  Therefore, the defendant is

entitled to a new trial on both charges.").

¶ 34    Accordingly, we also disagree with Delgado's contention that

he was acquitted of both crimes because, as he contends, "[e]ach

verdict included an affirmative jury finding that effected an

acquittal on the other count."  By this reasoning, we could

conversely conclude that each verdict includes an affirmative

finding that effected a conviction.  We will not apply this reasoning.

## IV. Conclusion

¶ 35     The judgment and sentence are reversed, and the case is remanded to the trial court.  The prosecution may choose to retry Delgado on either the robbery count or the theft from the person of another count, or both.  But, if the prosecution elects to submit both counts to the jury, such submission must be accompanied by an instruction that the jury may convict of either the robbery count or the theft from the person of another count, but not both.

JUDGE MILLER and JUDGE NAVARRO concur.