23CA1413 Peo v Johnson 03-05-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1413
City and County of Denver District Court No. 21CR20003
Honorable Darryl F. Shockley, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Neshan M. Johnson,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE FREYRE
Brown and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 5, 2026

---

Philip J. Weiser, Attorney General, Jessica E. Ross, Senior Assistant Attorney General and Assistant Solicitor General, Denver, Colorado, for Plaintiff-Appellee

Eric A. Samler, Alternate Defense Counsel, Hollis A. Whitson, Alternate Defense Counsel, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Neshan M. Johnson, appeals his convictions of second degree murder, attempted manslaughter (reckless), attempted first degree assault (extreme indifference), vehicular eluding, and accessory to second degree murder.  We affirm.

## I.     Background

¶ 2     On a snowy night, Johnson drove around Denver in a stolen vehicle with two underaged teenagers, R.C. and D.M.  The vehicle contained a semiautomatic rifle, a pistol, and an airsoft gun.

¶ 3     When the trio stopped at a stoplight, the car behind them was unable to stop in time and rear-ended them.  Angry, R.C. asked Johnson if he could get out and respond to the collision.  Passenger D.M. testified that Johnson told R.C., "Yeah."  R.C. then got out of Johnson's vehicle and began shooting the semiautomatic rifle at the car behind them.  After firing approximately ten to fifteen shots, R.C. returned to Johnson's vehicle and the trio drove away.

¶ 4     The driver of the vehicle that rear-ended Johnson, P.C., was struck by three of R.C.'s bullets and died.  The car behind P.C.'s car, driven by J.A., was also caught in the gun fire, but both the car and the driver were unharmed.

¶ 5    A few hours later, police spotted Johnson's vehicle and began pursuing it after learning that the vehicle was stolen.  Rather than slowing down, Johnson accelerated, resulting in a short police chase.  Johnson eventually lost control of the car, and it crashed into a pole.  Johnson, R.C., and D.M. got out of the car and fled on foot.  The three were quickly apprehended by police.  When R.C. was arrested, he told police officers, "Did you find my toys? [. . .] Crip set, this is going to get me my stripes."

¶ 6    A jury convicted Johnson as a complicitor of two counts of second degree murder, one count of attempted manslaughter (reckless), one count of attempted first degree assault (extreme indifference), one count of vehicular eluding, and one count of accessory to second degree murder.

¶ 7    Johnson contends that reversal is warranted because the prosecutor inundated the jury with prejudicial gang-related evidence, and the verdicts of attempted manslaughter (reckless) and attempted first degree assault (extreme indifference) are legally inconsistent.  We disagree and conclude that (1) the broad gang-related evidence was relevant; (2) the irrelevant gang-related

evidence was not timely objected to; and (3) the jury verdicts are not inconsistent.

## II. The Court Did Not Reversibly Err by Admitting the Gang-Related Evidence

¶ 8 Johnson contends that the trial court reversibly erred by allowing extensive evidence pertaining to gangs generally and to his alleged gang membership. We disagree.

### A. Additional Facts

¶ 9 Before trial, the prosecution moved to join a case arising out of an earlier shooting in which Johnson, R.C., and D.M. were allegedly involved (the Montview shooting). The prosecution believed both shootings were gang motivated. In its joinder motion, the prosecution alternatively moved to introduce gang evidence and associated expert testimony in this case. The motion and attached expert letter contained detailed information concerning gangs, including the historical background of Denver gangs and gang culture. Johnson objected and the court set the matter for a hearing.

¶ 10 At the hearing, the prosecution presented the following evidence that it believed supported Johnson's gang affiliation:

- R.C. was a "very well-known East Side Crip" who went by the moniker "Lil Rocca." R.C.'s father was also a well-known East Side Crip. Johnson was an aspiring East Side Crip.

- At the time P.C. was killed, R.C. was trying to earn the respect of his gang.

- Numerous photographs were retrieved from a phone that showed Johnson with a "known Crip gang member." Another photograph showed Johnson brandishing a gun, believed to be the one used in the Montview shooting, with a blue bandana around it — the color associated with the Crip gang. Still other images showed Johnson displaying hand signs that symbolized the phrase "everybody killer" and displaying "the typical C that is used to denote Crip affiliations."

- Facebook communications by Johnson discussed being a Crip. One showed a message sent to Johnson asking, "Are you a Crip?" to which Johnson responded, "I'm affiliated, about to be certified."

4

¶ 11    At the hearing, the prosecution argued that the jury needed expert testimony on how gangs operate in order to understand the slang used by R.C. and Johnson, their relationship, and the significance of other evidence, including hand signals, clothing, and colors.  The prosecutors stated that "at no point during the trial would [they] talk generally about all the terrible stuff that Crips do," noting that general information about Crip actions was not relevant. In response, defense counsel argued that P.C.'s shooting was not gang motivated and that there was insufficient evidence to show that Johnson was a gang member.

¶ 12    The trial court denied the motion to join the Montview shooting and concluded that while the rule permitted it to join the two cases, doing so would be overly prejudicial.  It then found that the gang evidence was relevant and intrinsic to the case because it helped to explain why the young men were driving a stolen car with guns and why they would shoot at other cars.  The trial court found that the probative value of the evidence outweighed any unfair prejudice.  Nevertheless, the court recognized the inherent prejudice in such evidence and stated:

Now, I do believe that, in reading the case law on this matter, the danger is just letting in every single historical fact and fact about the East Side Crips or the Crips in general. . . . I do believe that . . . it would probably be appropriate for the expert to talk about the history, just briefly . . . . But as far as the actual expert testimony as to the gang affiliation and the facts of this case, obviously, the Court believes that there is – there will have to be some limitations on the testimony.

¶ 13    The prosecution then explained that the evidence set forth in its motion, rather than all the details contained in the expert's letter, reflected what it intended to introduce at the trial. With that caveat, the court stated:

What we'll do, folks is, for the Defense, if there are any of these areas listed out in the People's motion that you are objecting to – and, obviously, some of this is going to be what happens at trial and what comes out at trial, but I will entertain a motion in limine indicating what information you believe is not appropriate and may not apply to the facts of this particular case.

. . . .

Any of the evidence that's coming in is still subject to all the other rules of evidence, and so I would expect that if there's any objections, that they would be made contemporaneously or, like I said, in a motion in limine prior to trial.

6

¶ 14    Defense counsel did not file any motions in limine and did not object to the admission of the gang evidence when it was admitted at trial.

¶ 15    At trial, the prosecution admitted the photographs and videos of Johnson wearing blue bandanas, holding guns, and flashing what appeared to be gang signs.  It also admitted a text message in which Johnson admitted he was a Tre Tre Crip.  The prosecution also introduced expert witness testimony about the following:

- the basic history and structure of gangs and the gang scene in Denver;

- gang monikers, including that R.C. had a moniker, but Johnson did not;

- blue paisley is the color traditionally associated with the Crips;

- the gang signs, graffiti, and flags that represented the Crips;

- respect is a central pillar in gang culture and members trying to "gain[] stripes" or gain rank within the gang;

- an "aspiring gang member" has to commit acts of violence to "demonstrate their loyalty," and those acts

7

could be directed towards anyone, not just rival gang members; and

- opinions related to the case, including that R.C. and Johnson were active members of the Tre Tre Crip gang, but that Johnson outranked R.C. because Johnson referred to R.C. by his gang name and referred to him as "little brother" and that their behavior during the shooting was consistent with "young, up-and coming gang members trying to put in work and achieve status."

¶ 16    The defense presented a gang expert who generally rebutted the prosecution's argument that this was a gang-motivated shooting and opined that R.C. was an "immature kid" who didn't "understand the ramifications of what had happened" or what he had said to the police.

¶ 17    Before each expert's testimony, the trial court instructed the jury that the evidence about gang affiliations was presented for a

limited purpose and that the jury could only consider it for that limited purpose.[1]

### B. Standard of Review and Applicable Law

¶ 18   "We review a trial court's evidentiary rulings for abuse of discretion." *Nicholls v. People*, 2017 CO 71, ¶ 17. "A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or when the trial court misapplies or misconstrues the law." *Fisher v. People*, 2020 CO 70, ¶ 13. Under this standard, "we ask not whether we would have reached a different result but, rather, whether the trial court's decision fell within the range of reasonable options." *People v. Archer*, 2022 COA 71, ¶ 23 (quoting *Hall v. Moreno*, 2012 CO 14, ¶ 54).

¶ 19   In general, all relevant evidence is admissible. CRE 402. Evidence is relevant if it tends to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence. CRE 401.

---

[1] The limited purposes included identity, intent, motive, credibility, and absence of accident or mistake.

¶ 20    Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.  CRE 403.  Evidence is considered unfairly prejudicial if it has an "undue tendency to suggest a decision on an improper basis . . . such as sympathy, hatred, contempt, retribution, or horror."  *People v. Clark*, 2015 COA 44, ¶ 18 (citation omitted).  In reviewing a trial court's determination under CRE 403, "we assume the maximum probative value that a reasonable fact finder might give the evidence and the minimum unfair prejudice to be reasonably expected."  *Clark*, ¶ 18 (citation omitted).

¶ 21    Because gangs are viewed with disfavor by society, gang-related evidence must be admitted with care.  *Id.* at ¶ 16.  However, such evidence may be admissible to show motive for the crime.  *Id.* at ¶ 15; *People v. Shanks*, 2019 COA 160, ¶ 73; *see People v. Trujillo*, 2014 COA 72, ¶ 72.

¶ 22    We review the court's pretrial ruling generally admitting the gang evidence under the harmless error standard because Johnson objected to the admission of the gang evidence in its entirety. Under this standard, we would reverse only if the evidence

substantially influenced the verdict or affected the fairness of the trial. *People v. Delsordo*, 2014 COA 174, ¶ 7. However, because the record contains no motions in limine identifying what specific gang evidence should be excluded and because defense counsel did not object to the gang evidence as it was introduced during the trial, we review the admission of the specific evidence Johnson challenges on appeal for plain error. An error is plain if it is obvious and if it so undermines the fairness of the proceeding so as to cast doubt on the reliability of the conviction. *See Bock v. People*, 2024 CO 61, ¶ 24.

## C. Analysis

¶ 23    Johnson contends that the trial court abused its discretion by admitting the above-described gang evidence because it was either irrelevant or its relevance was substantially outweighed by the danger of unfair prejudice.

¶ 24    Concerning the court's pretrial ruling admitting gang evidence generally, we discern no abuse of discretion and conclude that the evidence was helpful to the jury's understanding of the motive for the shooting, the vernacular spoken by Johnson and R.C. before and after the shooting, the relationship between Johnson and the

11

juveniles, and the presence of the weapons in the car. The prosecution's theory of the case was that the motive for the shooting "was about gaining stripes" and that Johnson was complicit by giving permission to a younger member of the gang to take a life to earn said stripes. *Clark*, ¶ 15 (gang evidence is admissible to show motive for the crime). Neither the prosecution nor the defense contested the facts that Johnson knew there were guns in the car, that the car was stolen, or that Johnson said something to R.C. before R.C. exited the car. The salient issue for the jury to decide was whether Johnson's statement to R.C. — whatever it was — aided and abetted R.C. in shooting the car behind them. Moreover, other evidence supported the prosecution's theory, including R.C.'s statement when arrested, "Crip set. This will earn me my stripes. Did you find my toys?" Thus, the challenged evidence explained the relationship between Johnson and R.C., as well as Johnson's motive for aiding and abetting the shooting, both proper purposes for admitting gang evidence. *See id.*; *Trujillo*, ¶ 57.

¶ 25   We acknowledge that the volume of gang evidence admitted at trial exceeded what the court authorized in its pretrial ruling and that much of it did not relate to the case facts, raising CRE 403

12

concerns.  However, reviewing this evidence through the plain error lens, we conclude that any error was not obvious and thus, reversal is not warranted.  As previously explained, the court recognized the potential prejudice that could arise from this evidence and instructed the defense to file motions in limine and to contemporaneously object to any potentially prejudicial evidence at the time of its admission.  But no motions were filed and no objections were made, which the court could have reasonably understood as a signal by defense counsel that the evidence being admitted was consistent with the pretrial ruling and not unduly prejudicial.

¶ 26     Moreover, the jury received a limiting instruction at the time the gang evidence was admitted and in the final written instructions.  The written instruction stated, "it is not a crime to belong to a gang, and [Johnson is] entitled to be evaluated solely on the crimes submitted for [the jury's] consideration."  Absent contrary evidence, we presume the jury understood and followed this instruction.  *See People v. Abdulla*, 2020 COA 109M, ¶ 58 ("[W]e employ the presumption that the jury understands and

applies the given instructions unless a contrary showing is made
. . . .")

¶ 27 Finally, we note that the jury returned a verdict on lesser degrees of murder and attempted murder, indicating that it carefully considered the evidence and the court's instructions. *See Washington v. People*, 2024 CO 26, ¶ 35 (jury verdict on lesser degree of murder indicated that error did not cause jury to blindly convict the defendant); *People v. Manyik*, 2016 COA 42, ¶ 40 (jury's acquittal on most serious charge indicated that it convicted based on the evidence and was not swayed by improper prosecutorial arguments). Under these circumstances, we discern no abuse of discretion in the court's decision to generally admit gang evidence, and we perceive no plain error by the court in not sua sponte limiting the broader gang evidence at trial.

## III. Jury Verdicts

¶ 28 Johnson next contends that the jury verdicts for attempted reckless manslaughter and attempted assault (extreme indifference) of J.A. are logically and legally inconsistent and therefore cannot stand. We are not persuaded.

## A.    Additional Facts

¶ 29    Johnson was originally charged with attempted first degree murder (extreme indifference) and attempted first degree assault (extreme indifference) of J.A., the driver of the car behind P.C.'s car. At Johnson's request,[2] the jury was also instructed on the lesser included offenses of attempted second degree murder and attempted reckless manslaughter.

¶ 30    The trial court instructed the jury on the elements of attempted manslaughter (reckless) in Instruction No. 18 as follows:

1) That the defendant,

2) In the State of Colorado, at or about the date and place charged,

3) Recklessly,

4) Engaged in conduct constituting a substantial step toward the commission of manslaughter (reckless) against [J.A.]

---

[2] The initial jury instruction conference was off the record. Following the conference however, the trial court noted that Johnson had "indicated that [he] did want lesser [included offenses]" and that "[the court] ended up adding lesser [included offenses] to each one of the charges and then also to the complicity [count]."

¶ 31    Instruction No. 18 described the elements of manslaughter (reckless) as:

>    1) That the defendant,
>
>    2) In the State of Colorado, at or about the date and place charged,
>
>    3) Recklessly,
>
>    4) Caused the death of another person

Instruction No. 19 instructed the jury regarding the elements of attempt to commit assault in the first degree (extreme indifference):

>    1) That the defendant,
>
>    2) In the State of Colorado, at or about the date and the place charged,
>
>    3) Knowingly,
>
>    4) Engaged in conduct constituting a substantial step toward the commission of assault in the first degree (extreme indifference) against [J.A.].

¶ 32    Instruction No. 10 described the elements of assault in the first degree (extreme indifference) as:

>    1) That the defendant,

2) In the State of Colorado, at or about the date and place charged,

3) Knowingly,

4) Under circumstances manifesting extreme indifference to the value of human life,

5) Engaged in conduct which created a grave risk of death to another person, and

6) Thereby caused serious bodily injury to any person.

¶ 33 The jury found Johnson guilty as a complicitor of one count of attempted manslaughter (reckless) of J.A. as a lesser included offense of attempted extreme indifference murder and one count of attempted extreme indifference assault of J.A.

B. Standard of Review and Applicable Law

¶ 34 "The question of whether jury verdicts are mutually exclusive is a question of law that we review de novo." *People v. Shockey*, 2026 CO 10, ¶ 15; *cf. Kreiser v. People*, 604 P.2d 27, 28-30 (Colo. 1979) (considering whether the jury's verdict was ambiguous based only on the objective circumstances).

¶ 35 As both parties acknowledge, this issue is unpreserved, limiting our review to plain error. *See People v. Leyba*, 2019 COA

17

144, ¶ 55, *aff'd*, 2021 CO 54.  Reversal under this standard requires that the error be obvious and so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction.  *People v. Walker*, 2022 COA 15, ¶ 28.

¶ 36     "Taken together, the Fifth Amendment Due Process Clause and the Sixth Amendment guarantee of a trial by jury permit conviction only upon a jury verdict finding the defendant guilty of having committed every element of the crime with which he has been charged."  *Sanchez v. People*, 2014 CO 29, ¶ 13 (first citing *Sullivan v. Louisiana*, 508 U.S. 275, 277-78 (1993); and then citing *Medina v. People*, 163 P.3d 1136, 1140 (Colo. 2007)).  "The prosecution bears the burden of proving all elements of the offense charged and must persuade the factfinder 'beyond a reasonable doubt' of the facts necessary to establish each of those elements."  *Sullivan*, 508 U.S. at 277-78 (citations omitted).

¶ 37     Consistent with these principles, "[a] verdict in a criminal case should be certain and devoid of ambiguity."  *Yeager v. People*, 462 P.2d 487, 489 (Colo. 1969).  Indeed, "[t]he verdict must 'convey beyond a reasonable doubt the meaning and intention of the jury.'"

18

*Shockey*, ¶ 38 (quoting *People v. Durre*, 690 P.2d 165, 173 (Colo. 1984)). However, consistency in verdicts is not necessarily required. *People v. Brooks*, 2020 COA 25, ¶ 12 (citing *People v. Frye*, 898 P.2d 559, 571 (Colo. 1995)). And courts "have a duty 'to reconcile and uphold verdicts if the evidence so permits.'" *People v. Scearce*, 87 P.3d 228, 232 (Colo. App. 2003)).

¶ 38    Colorado law recognizes three circumstances in which a verdict may be unconstitutionally inconsistent with another verdict: (1) when an acquittal of one offense necessarily contradicts a conviction of another because the evidence of each was the same, *see Frye*, 898 P.2d at 567 (citing *Robles v. People*, 417 P.2d 232, 234 (Colo. 1966)); (2) when verdicts are, because of the elements of the respective offenses, mutually exclusive, *People v. Delgado*, 2019 CO 82, ¶¶ 20, 23, 28; and (3) when a jury's special interrogatory response negates an element of the substantive offense to which the interrogatory applies, *Brooks*, ¶¶ 22-25.

¶ 39    "[T]wo guilty verdicts are mutually exclusive when the existence of an element of one of the crimes negates the existence of an element of the other crime." *People v. Rigsby*, 2020 CO 74, ¶ 27 (emphasis omitted). Both legal and logical inconsistency must be

19

present for verdicts to be mutually exclusive. *See id.* at ¶¶ 26-27 (concluding verdicts that were logically, but not legally, inconsistent were not mutually exclusive). When a defendant is convicted of crimes featuring elements that are mutually exclusive, the defendant has not been convicted of each crime beyond a reasonable doubt because there is an explicit finding of doubt in the contradictory element. *Delgado*, ¶ 23.

### C. Analysis

#### 1. Waiver

¶ 40    We first address the People's argument that Johnson waived this issue by not objecting before the jury was discharged.

¶ 41    Waiver is the intentional relinquishment of a known right or privilege. *People v Rediger*, 2018 CO 32, ¶ 39. Although a waiver can be implied, the conduct upon which the implied waiver is based must be unequivocal, and it must clearly manifest an intent to relinquish the claim. *Phillips v. People*, 2019 CO 72, ¶ 21; *Dep't of Health v. Donahue*, 690 P.2d 243, 247 (Colo. 1984).

¶ 42    After the court read Johnson's guilty verdicts, defense counsel requested that the court poll the jury, and the court did so. At no time did defense counsel object to any of the jury's verdicts.

However, silence alone is not indicative of Johnson's intent to relinquish the right to challenge the verdicts on appeal. *See Rediger*, ¶ 3 (concluding that mere acquiescence by a defendant does not constitute a waiver without some record evidence that the defendant intentionally relinquished a known right)

¶ 43 Moreover, even in the absence of a transcript of the jury instruction conference, we do not view Johnson's request for lesser included offenses, a common request made by a defendant, as signaling a clear manifestation by Johnson of his intent to relinquish his challenge to legally and logically inconsistent verdicts. Therefore, we address the merits of his contention.

## 2. The Verdicts Are Not Inconsistent

¶ 44 Johnson contends that he could not have acted both knowingly under circumstances manifesting extreme indifference to the value of human life (attempted extreme indifference assault) and recklessly (attempted reckless manslaughter) and that the verdicts are legally and logically inconsistent. We are not persuaded for three reasons.

¶ 45 First, we reject Johnson's argument that there "was one singular act" by R.C. directed at J.A. and thus, the facts underlying

the convictions are the same. *See Frye*, 898 P.2d at 567. While the evidence showed that R.C. exited the vehicle and fired shots in the direction of P.C.'s and J.A.'s cars, each shot fired constituted a separate crime. The jury could reasonably have concluded that different shots satisfied the elements of attempted reckless manslaughter and attempted extreme indifference assault as to J.A.[3] Therefore, this case is unlike *People v. Beatty*, 80 P.3d 847, 852-53 (Colo. App. 2003), where the division concluded that the defendant could not have two different culpable mental states for a single assaultive act.

¶ 46    We are not convinced that *People v. Rigsby* requires a different result. Unlike in *Rigsby*, where the jury convicted the defendant of three counts of second degree assault for the single act of smashing a glass in the victim's face, one of which was a lesser included offense, Johnson concedes the jury here convicted him of two distinct crimes, but he argues that they sprung from the same

_____

[3] For example, the jury could have reasonably concluded that the three shots that killed P.C. were reckless, while the remaining seven to twelve shots fired in the direction of P.C. and J.A. reflected extreme indifference.

facts. We disagree because each shot R.C. fired constituted a different basis on which the jury could convict Johnson, and therefore, each could have a different mens rea associated with it. Because a reasonable jury may have found that some of the shots satisfied the elements of attempted reckless manslaughter while the others satisfied the elements of attempted extreme indifference assault, the verdicts are not legally inconsistent. *See Rigsby*, ¶ 23 ("[G]uilty verdicts that are legally consistent are not mutually exclusive.").

¶ 47    Second, to the extent Johnson asks us to find a legal inconsistency based on the jury's acquittal of attempted extreme indifference murder, we decline to do so. As our supreme court has explained, "[a] guilty verdict is a specific finding, encompassing all the elements of the crime. An acquittal isn't. In other words, while an acquittal has various explanations, a guilty verdict has but one." *Delgado*, ¶ 26. Therefore, the jury's decision to acquit Johnson of attempted extreme indifference murder may be rooted in lenity or compromise and does not necessarily reflect a finding that R.C. did not act knowingly under circumstances manifesting extreme indifference to the value of human life.

¶ 48    Third, we conclude the verdicts are not mutually exclusive because none of the elements of one offense negates an element of the other, and they are not logically inconsistent. *See id.* at ¶¶ 20, 23, 28. As a matter of logic, we reject Johnson's argument that the jury could not find he acted both "knowingly under circumstances manifesting an extreme indifferent to human life, and recklessly."

¶ 49    As relevant here, a person commits reckless manslaughter if he or she recklessly causes the death of another person. *See* §§ 18-2-101, 18-3-104(1)(a), C.R.S. 2025. A person acts recklessly when he or she consciously disregards a substantial and unjustifiable risk that a result will occur or that a circumstance exists. *See* § 18-1-501(5), C.R.S. 2025.

¶ 50    A person commits first degree assault (extreme indifference) if that person, "[u]nder circumstances manifesting extreme indifference to the value of human life," (1) "knowingly engages in conduct which creates a grave risk of death to another person" and (2) "thereby causes serious bodily injury to any person." § 18-3-202(1)(c); *see* COLJI-Crim. 3-2:03 (2024). "Grave" and "extreme indifference" are not statutorily defined. However, "grave" is commonly understood to mean "serious or imminent, or likely to

24

produce great harm or danger," while "extreme indifference" is generally understood to mean "a total lack of concern or caring." *People v. Esparza-Treto*, 282 P.3d 471, 480 (Colo. App. 2011) (first quoting *People v. Marcy*, 628 P.2d 69, 79 (Colo. 1981); and then quoting *People v. Johnson*, 923 P.2d 342, 347 (Colo. App. 1996)). A person acts "knowingly" with "respect to conduct . . . described by a statute defining an offense when he is aware that his conduct is of such nature" and, with "respect to a result of his conduct, when he is aware that his conduct is practically certain to cause the result." § 18-1-501(6).

¶ 51    As to both crimes, "[a] person commits criminal attempt if, acting with the kind of culpability otherwise required for commission of an offense, he engages in conduct constituting a substantial step toward the commission of the offense." *Palmer v. People*, 964 P.2d 524, 527 (Colo. 1998).

¶ 52    Given these definitions, we discern no logical inconsistency between a jury concluding that Johnson took a substantial step toward recklessly causing J.A.'s death and its conclusion that, under circumstances manifesting an extreme indifference to the value of human life, he took a substantial step toward knowingly

25

engaging in conduct that created a grave risk of J.A.'s death and thereby caused J.A. serious bodily injury. Indeed, each crime is directed at a different result — causing death and creating a grave risk of death and causing serious bodily injury. Moreover, one may act both recklessly and knowingly in a manner that demonstrates an extreme indifference to the value of human life. *Cf. Candelaria v. People*, 148 P.3d 178, 182 (Colo. 2006) ("Whether one acts with [specific intent] or merely [knowingly], he may do so in a manner that . . . demonstrates an extreme indifference to the value of human life generally . . . ." (citations omitted)).

¶ 53    Further, Johnson acknowledges that in the context of lesser included offenses, recklessness is encompassed in the knowingly element of extreme indifference. *See Rigsby*, ¶ 21 ("If recklessness suffices to establish an element, that element also is established if a person acts knowingly or intentionally."). And he has not identified, nor can we discern, a specific element of one verdict that negates an element of the other. *Frye*, 898 P.2d at 569 n.13 (acknowledging that where the existence of an element of one crime negates the existence of an element of another crime, courts are "uniform in their agreement that the verdicts are legally and logically

26

inconsistent and should not be sustained"); *accord People v. Weare*, 155 P.3d 527, 529 (Colo. App. 2006); *People v. Jones*, 990 P.2d 1098, 1104 (Colo. App. 1999).

¶ 54     Accordingly, we discern no plain error that is so obvious and substantial that it undermines the fundamental fairness of the trial itself. *Rediger*, ¶ 48.

## IV.   Disposition

¶ 55     The judgment is affirmed.

JUDGE BROWN and JUDGE SCHUTZ concur.