Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's
homepage at http://www.courts.state.co.us.  Opinions are also
posted on the Colorado Bar Association's homepage at
http://www.cobar.org.

ADVANCE SHEET HEADNOTE
December 9, 2019

**2019 CO 100**

**No. 18SC394, *Margerum v. People*—Impeachment—Cross-examination—
Confrontation—Multiple Convictions.**

In this case, the supreme court considers: (1) whether a witness's credibility
may be impeached based on her probationary status at the time she testifies; and
(2) whether Margerum may be convicted of both assault and menacing based on
the same conduct.  The supreme court holds that that a witness's probationary
status is always relevant when the witness is on probation with the State and
testifies for the prosecution.  But because the supreme court concludes that the trial
court's error in not allowing defense counsel to impeach a witness based on her
probationary status was harmless under the facts here, it concludes that reversal
is not required.  The supreme court further holds that Margerum was properly
convicted of both assault and menacing because the facts here support both
convictions.

Accordingly, the judgment of the court of appeals is affirmed.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2019 CO 100

### Supreme Court Case No. 18SC394
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 14CA1392

### Petitioner:

Lance Webster Margerum,

v.

### Respondent:

The People of the State of Colorado.

### Judgment Affirmed
*en banc*
December 9, 2019

**Attorneys for Petitioner:**
Megan A. Ring, Public Defender
Meredith K. Rose, Deputy Public Defender
*Denver, Colorado*

**Attorneys for Respondent:**
Philip J. Weiser, Attorney General
Gabriel P. Olivares, Assistant Attorney General
*Denver, Colorado*

**JUSTICE BOATRIGHT** delivered the Opinion of the Court

¶1    While in a friend's apartment, Lance Margerum made sexual advances towards E.S. When she rebuffed him, he pushed her onto a bed and began kissing and groping her. E.S. fought back and promised that she would not tell anyone, and Margerum allowed her to leave. Margerum then invited his sister, T.M., to the apartment to pick up some clothes. When she arrived, Margerum grabbed her, choked her, and punched her. E.S. testified at Margerum's trial while she was on probation for an unrelated offense. The trial court refused to allow Margerum to impeach E.S.'s credibility based on her probationary status. The jury found Margerum guilty of unlawful sexual contact with respect to E.S. and both third-degree assault and felony menacing with respect to T.M. The court of appeals affirmed Margerum's convictions. *People v. Margerum*, 2018 COA 52, ¶ 47, __ P.3d __.

¶2    Margerum now argues that the trial court's refusal to allow defense counsel to impeach E.S.'s credibility based on her probationary status requires reversal. He also argues that he cannot be convicted of both assault and menacing based on the same conduct. Therefore, we must answer two questions here: (1) whether a witness's credibility may be impeached based on her probationary status at the time she testifies; and (2) whether Margerum may be convicted of both assault and menacing based on the same conduct. Our answer to both of those questions is yes. But because we conclude that the trial court's error in not allowing defense

2

counsel to impeach E.S. based on her probationary status was harmless, we conclude that reversal is not required. Accordingly, we affirm the opinion of the court of appeals on different grounds.

## I. Facts and Procedural History

¶3 Margerum often slept on his friend's couch. One day, Margerum arrived at his friend's apartment when his friend's fiancée, E.S., was there alone. Margerum propositioned E.S., and when she refused, he pushed her onto a bed and began kissing her, groping her, and attempting to remove her clothes. E.S. pushed and hit Margerum until he stopped. Margerum allowed E.S. to leave after she convinced him that she would not tell anyone about what had happened. Margerum then contacted his sister, T.M., and told her to come to the apartment so that he could give her some clothes. Once T.M. arrived at the apartment, she discovered that Margerum did not have any clothes for her, and she turned to leave. Margerum then came up behind her, put her in a chokehold, and began punching her. After a prolonged struggle, T.M. hit Margerum and escaped. As a result of these incidents, the People charged Margerum with several offenses: unlawful sexual contact and third-degree assault of E.S.; and unlawful sexual contact, second-degree assault, and felony menacing of T.M.

¶4 E.S. testified at Margerum's trial. At that time, she was on probation for misdemeanor forgery. Defense counsel sought to impeach E.S.'s credibility with

her forgery conviction and the fact that she was currently on probation. The trial court allowed defense counsel to cross-examine E.S. about the facts underlying her forgery conviction, but it did not allow cross-examination concerning the conviction itself or the fact that E.S. was on probation when she testified.

¶5 Ultimately, with respect to E.S., the jury found Margerum guilty of unlawful sexual contact but acquitted him of third-degree assault. As to T.M., the jury found Margerum guilty of third-degree assault and felony menacing but acquitted him of second-degree assault and unlawful sexual contact. Subsequently, Margerum was sentenced to jail for one year for third-degree assault and for one year for unlawful sexual contact and to the Department of Corrections for six years for felony menacing,[1] all to run concurrently. He appealed, arguing that: (1) the trial court erred in prohibiting him from impeaching E.S. with respect to her probationary status; and (2) the evidence was insufficient to support his convictions for both assault and menacing because those convictions stemmed from the same conduct.

---

[1] Margerum was on parole for a felony when he was convicted of felony menacing here, so his sentence was aggravated per section 18-1.3-401(8)(a)(II), C.R.S. (2019), making his presumptive sentencing range two-to-six years instead of one-to-three years. *See* 18-1.3-401(1)(a)(V)(A) (listing classes of felonies and their presumptive ranges).

4

¶6 Regarding impeachment, the court of appeals concluded that probationary status is not always relevant as evidence of bias. *Margerum*, ¶ 47. The court explained that the admissibility of a witness's probationary status for purposes of impeachment is predicated on some logical connection between her probationary status and her motivation for testifying. *Id.* And because the court of appeals determined that such a logical connection was lacking in this case, it concluded that the trial court did not err in disallowing the impeachment inquiry. *Id.* at ¶¶ 52–53.

¶7 As to the sufficiency of the evidence, the court of appeals determined that the menacing statute does not require that the victim experience fear *prior to* any injury. *Id.* at ¶ 61. And because the court determined that present injury can serve as the basis for fear of imminent serious bodily injury, it concluded that the evidence against Margerum was sufficient to support convictions for both assault and menacing based on the same conduct. *Id.* at ¶¶ 60, 69. Margerum then petitioned this court, and we granted certiorari.[2] We now affirm, albeit on different grounds regarding the impeachment issue.

---

[2] We granted certiorari to review the following issues:
1. Whether the court of appeals erred by announcing a new rule that a witness's probationary status is not admissible to impeach that witness

## II. Confrontation and Probationary Status

¶8 To answer the question of whether a witness's probationary status is admissible for impeachment purposes, we first examine U.S. Supreme Court precedent regarding a criminal defendant's right to confront the witnesses against him. Then, we look to how Colorado has resolved issues regarding confrontation as it relates to a witness's probationary status and the standard to impeach a witness's credibility based on that status. After doing so, we conclude that a witness's probationary status is always relevant when the witness is on probation with the State and testifies for the prosecution because the witness is in a vulnerable position. Hence, the failure to allow the impeachment inquiry here was error. But we conclude that, in this instance, the error was harmless and thus, does not require reversal.

## A. Standard of Review

¶9 Trial courts have discretion to impose limits on cross-examination of witnesses, and we will not disturb rulings on those limits absent an abuse of that

---

for bias unless there is a "logical connection" between the probationary status and the witness's potential motive for testifying.

2. Whether a single physical act of assault, with no additional physical action or verbal threat, can be sufficient to support both an assault conviction and a menacing conviction.

6

discretion. *People v. Raffaelli*, 647 P.2d 230, 233–34 (Colo. 1982); *People v. Conyac*, 2014 COA 8M, ¶ 91, 361 P.3d 1005, 1023. "A trial court abuses its discretion when it misapplies the law." *People v. Jefferson*, 2017 CO 35, ¶ 25, 393 P.3d 493, 499.

**B. Law**

¶10    At trial, criminal defendants are guaranteed the right to confront the witnesses against them. U.S. Const. amend VI; Colo. Const. art. II, § 16. This right is primarily secured through cross-examination. *See Davis v. Alaska*, 415 U.S. 308, 315–16 (1974). Cross-examination allows a party to interrogate a witness's "perceptions and memory" and is also "the principal means by which the believability of a witness and the truth of his testimony are tested." *Id.* at 316. In that vein, "the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness." *Id.* Any witness's credibility can be attacked by unearthing any potential source of impartiality, such as bias or an ulterior motive. *See id.* Moreover, a *prosecution* witness's partiality may be affected by her being on probation because the witness is in a "vulnerable status as a probationer." *Id.* at 318. And the partiality of a witness is always relevant. *Id.* at 316.

¶11    It is well-settled in Colorado that, when a witness testifies against a party, the party has a right to impeach that witness's credibility. *See Tollifson v. People*, 112 P. 794, 797 (Colo. 1910). More specifically, we have recognized that "a court must allow broad cross-examination of a prosecution witness as to bias, prejudice

7

and motivation for testifying." *People v. Bowman*, 669 P.2d 1369, 1375 (Colo. 1983). This "need for wide latitude in cross-examination is also present when a prosecution witness is on probation and his testimony could be prompted by fear or concern for possible jeopardy to his probationary status." *Id.* But we are not only concerned with *fear* motivating a prosecution witness to give favorable testimony; we must *also* consider whether the witness "might be influenced by a promise of, or hope or expectation of, immunity or leniency." *People v. King*, 498 P.2d 1142, 1144–45 (Colo. 1972). And when a prosecution witness is on probation, the key question is whether there exists a "might have been influenced nexus" between the witness's probationary status and her potentially biased motive for testifying. *See Kinney v. People*, 187 P.3d 548, 560 (2008) (quotation omitted).

¶12    We conclude that this nexus always exists when a prosecution witness is on probation in the same sovereign—here, the State of Colorado—for three reasons.[3] First, a prosecution witness who is on probation in the same state court system in which she is testifying is in a vulnerable position. That witness's ability to remain

---

[3] We express no opinion on whether a prosecution witness who is on probation in a different sovereign (e.g., federal court) than the prosecution satisfies the "might have been influenced" nexus requirement.

on probation is potentially in jeopardy and the threat of probation revocation—whether real or merely perceived—creates an incentive for a witness to try to curry favor with the prosecution who can seek the revocation of that witness's probation. Second, as we explained in *Kinney* when discussing a "might have been influenced" nexus requirement, the desire to potentially curry favor with a prosecutor who can affect a witness's probation creates at least a perception that the witness has a motive to provide favorable testimony for the prosecution. *Id.* at 650–61. And third, the witness's credibility is always relevant, meaning parties should be afforded wide latitude during cross-examination to discover any potential source of bias and, more importantly, to provide the jury with all relevant information needed to make a credibility determination. Hence, we hold that the "might have been influenced" nexus requirement is always satisfied when a prosecution witness is on probation in the same sovereign in which she is testifying. Therefore, the defense must be permitted to question a prosecution's witness about her probationary status when the witness is on probation in the same sovereign as the prosecution.

## C. Application

¶13    E.S. was on probation for a misdemeanor offense in Colorado. If she were found to have violated her probation, she could have been sentenced to the county jail. In this case, she was testifying for the prosecution in the State of Colorado,

9

albeit in a different county. Hence, the sovereign, the State of Colorado, was the same for both her probationary case and this case. Therefore, E.S.'s probationary status in Colorado might have influenced her testimony and that possibility is relevant evidence for an impeachment inquiry. Accordingly, applying our holding that the defense must always be permitted to ask a prosecution witness who is on probation in the same sovereign about her probationary status, we conclude that the trial court erred when it prohibited Margerum from impeaching E.S. based on her probationary status. But we must now determine whether that error requires reversal.

¶14 Because the error in this case is a preserved one of constitutional dimension, we review for constitutional harmless error. To deem a constitutional error harmless, the error must be found harmless beyond a reasonable doubt. *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986). An error is not harmless beyond a reasonable doubt if "there is a reasonable possibility that the [error] might have contributed to the conviction." *Hagos v. People*, 2012 CO 63, ¶ 11, 288 P.3d 116, 119 (alteration omitted) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)).

¶15 While E.S. was the only witness against Margerum as to his crimes against her, thus rendering her credibility critical, we nevertheless conclude that there is no reasonable possibility that the error in disallowing the probation impeachment

inquiry here contributed to Margerum's conviction. We reach this conclusion for three reasons.

¶16 First, defense counsel was permitted to cross-examine E.S. about the specific facts underlying her forgery conviction for which she was on probation. Therefore, while the jury was not informed that E.S. was on probation, it nevertheless received significant information about her conduct regarding her forgery conviction and could consider that information as it bore on her credibility.

¶17 Second, while a probation impeachment inquiry could have impacted E.S.'s credibility beyond the fact that she previously committed an act of dishonesty, any such effect would have been negligible. There is no evidence or allegation that E.S. was promised or expected leniency. There is similarly no evidence or allegation that she testified out of fear of the State. Also, E.S. was on probation in a different judicial district from the instant matter, which, while sufficient to create the "might have been influenced" nexus, decreases her motivation for testifying out of hope for leniency or fear of retribution that she may have arguably experienced.

¶18 Third, the nature of the case and the existence of a second victim (T.M.) who was assaulted in a similar manner close in time to E.S. corroborates E.S.'s testimony.

11

¶19 Accordingly, we conclude that the trial court's error in disallowing an impeachment inquiry related to E.S.'s probation was harmless beyond a reasonable doubt.

## III. Assault and Menacing

¶20 The second issue we accepted requires us to determine whether someone in Colorado can be convicted of both assault and menacing based on the same conduct. To do so, we first look to our statutes and precedent concerning the propriety of multiple convictions based on the same physical act. Next, we examine the plain language of the assault and menacing statutes to determine if there is any conflict in the statutory language that would preclude convictions under both statutes for the same conduct. Because there is not, we conclude that under the circumstances of this case, Margerum was properly convicted of both assault and menacing based on the same conduct because the facts here support both convictions.

## A. Standard of Review

¶21 The propriety of multiple convictions based on the same conduct is a legal question that we review de novo. *See Page v. People*, 2017 CO 88, ¶ 6, 402 P.3d 468, 469.

## B. Law

¶22    A single criminal transaction may generally be prosecuted under more than one criminal statute if the facts support such a prosecution. *People v. James*, 497 P.2d 1256, 1257 (Colo. 1972).   There are, however, exceptions to this rule. § 18-1-408(1)(a)–(e), C.R.S. (2019).[4]  But if no exception applies, and the offender's conduct violates multiple criminal statutes, then "the offender may be prosecuted under any one or all of the" applicable statutes.  § 18-1-408(7); *see also* § 18-1-408(1).

¶23    Turning to the specific charges here, a person commits third-degree assault if he or she "knowingly or recklessly causes bodily injury to another person." § 18-3-204(1)(a), C.R.S. (2019).  A person commits menacing "if, by any threat or

---

[4] Specifically, under section 18-1-408(1), a defendant may not be convicted of more than one offense if:

(a) One offense is included in the other, as defined in subsection (5) of this section; or

(b) One offense consists only of an attempt to commit the other; or

(c) Inconsistent findings of fact are required to establish the commission of the offenses; or

(d) The offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct; or

(e) The offense is defined as a continuing course of conduct and the defendant's course of conduct was uninterrupted, unless the law provides that specific periods or instances of such conduct constitute separate offenses.

13

physical action, he or she knowingly places or attempts to place another person in fear of imminent serious bodily injury." § 18-3-206(1), C.R.S. (2019). When determining whether a person committed the crime of menacing, "the proper focus is on the intent and conduct of the actor, not of the victim." *People v. Shawn*, 107 P.3d 1033, 1035 (Colo. App. 2004).

## C. Application

¶24 After reviewing the propriety of multiple convictions based on the same conduct and the language of the relevant statutes here, we conclude that under the circumstances of this case, Margerum was properly charged and convicted of both assault and menacing based on the same conduct because the evidence here supports both convictions. We make this determination for three reasons: (1) the plain language of the assault and menacing statutes does not preclude prosecution for both; (2) none of the exceptions contained in section 18-1-408(1) apply here; and (3) the facts here support convictions under both statutes.

¶25 First, nothing in the language of the assault and menacing statutes precludes Margerum's convictions because there is no conflict or disqualifying overlap in the statutory elements. Importantly, the statutes address two different forms of harm. The assault statute seeks to prevent the *infliction* of bodily harm, whereas the menacing statute seeks to prevent the *fear* of serious bodily harm. Accordingly, a person can knowingly commit assault without intending to make the victim

afraid; conversely, a person can knowingly commit menacing without causing bodily harm. Similarly, a person can both inflict bodily harm and also intend to cause the victim fear of additional, serious bodily injury with the same act. Therefore, there is no conflict in the statutes themselves that precludes convictions for both offenses based on the same conduct.

¶26 Second, while section 18-1-408(1) contains five exceptions to the permissibility of multiple charges for the same conduct, none apply here. Although somewhat repetitive, we address each exception in turn for the sake of thoroughness.

¶27 Subsection (1)(a) establishes an exception for lesser included offenses, but the assault and menacing statutes do not share the requisite elements to qualify. *See Page*, ¶ 9, 402 P.3d at 470 (explaining that "an offense is a lesser included offense of another offense if the elements of the lesser offense are a subset of the elements of the greater offense" (quoting *Reyna-Abarca v. People*, 2017 CO 15, ¶ 64, 390 P.3d 816, 826)). Neither offense is a lesser included of the other because they have different elements. An element of assault is causing bodily injury, which is not proscribed by the menacing statute; whereas an element of menacing is placing or attempting to place another in fear of serious bodily injury, which is not proscribed by the assault statute. *Compare* § 18-3-204(1)(a) (third-degree assault), *with* § 18-3-206(1) (menacing). Along those same lines, establishing the elements

15

of one of the offenses does not necessarily establish the elements of the other. Hence, neither is a lesser included offense of the other.

¶28 Turning to the next exception, subsection (1)(b) prohibits multiple convictions when one charged crime is merely the attempt of another charged crime. Criminal attempt requires taking a "substantial step," with the requisite mental state, toward the commission of the relevant offense such that it constitutes strong corroboration of the actor's purpose to complete the offense. *See* § 18-2-101, C.R.S. (2019). Neither offense here is an attempt of the other. Just as we determined when we analyzed whether either offense is a lesser included offense of the other, the harms that the statutes seek to prevent are different. Third-degree assault involves inflicting an *actual* injury, whereas menacing involves intending to place another *in fear* of an injury. Therefore, neither offense is an attempt to commit the other.

¶29 Next, subsection (1)(c) states that a person cannot be convicted of two separate offenses if "[i]nconsistent findings of fact are required to establish the commission of the offenses." An example of inconsistent findings of fact for two separate offenses can be found in *People v. Delgado*, 2019 CO 82, 450 P.3d 703. In that case, this court held that the elements of robbery and theft from a person negated each other because a person cannot take property from another "*by force* and also by means *other than force*." *Id.* at ¶ 3, 450 P.3d at 704 (emphasis added).

16

Here, as noted above, the crimes of assault and menacing have different elements and address different forms of harm that, significantly, are not inconsistent. A person could commit both crimes, and implicate both harms, in the same physical action without an inconsistent finding by the fact finder. In other words, a consistent factual basis can establish that someone *caused* bodily injury to another while also knowingly placing the person in *fear* of serious bodily injury.

¶30 As to the next exception, subsection (1)(d) prohibits multiple convictions when one conviction is for a general course of conduct and another conviction is for a specific instance of that same conduct. As an example of this exception, one cannot be convicted of both filing false statements on liquor license applications — specific conduct — and recording a false instrument — general conduct. *See People v. Bagby*, 734 P.2d 1059, 1062 (Colo. 1987). This exception does not apply here because, as noted above, both the assault and menacing statutes address specific conduct. *See People v. Blair*, 579 P.2d 1133, 1143 (Colo. 1978) (noting that statutes that address general kinds of conduct will be apparent from the statutory language). Here, we have two statutes that address different forms of *specific* conduct, not one statute that addresses general conduct and another that addresses specific conduct. Again, the assault statute proscribes the specific conduct of causing bodily injury, while the menacing statute proscribes the specific conduct of causing or attempting to cause fear of serious bodily injury. In

17

fact, neither statute discusses any general course of conduct. *See* § 18-3-204; § 18-3-206.

¶31    The final exception, subsection (1)(e), addresses the situation where a single offense is defined as a continuing course of conduct. An example of such an offense is sexual assault; there, the legislature only authorized a single punishment for discrete acts of touching that occur within a single incident of such assault. *See Woellhaf v. People*, 105 P.3d 209, 215–16 (Colo. 2005). This exception, however, does not apply when a defendant is charged under two different statutes. *See People v. Quintano*, 81 P.3d 1093, 1099 (Colo. App. 2003). Accordingly, subsection (1)(e) does not apply here because Margerum was charged under two different statutes: section 18-3-204 for third-degree assault and section 18-3-206 for menacing.

¶32    In sum, none of the exceptions contained in section 18-1-408(1) preclude Margerum's convictions for assault and menacing.

¶33    Finally, the facts here support convictions for both assault and menacing. Margerum's primary argument appears to be that "[a] single assaultive act . . . cannot support both an assault conviction and a menacing conviction because menacing ends where assault begins: with bodily injury." But neither the statutory language nor legal precedent support this principle, and there is no reason that a single physical attack cannot constitute both assault and menacing. Practically speaking, a person who has inflicted a bodily injury on another during an attack

18

can also intend to place that person in fear of additional serious bodily injury.  And the facts here show that Margerum did just that.

¶34     Margerum put his sister T.M. in a chokehold long enough that she became dizzy and felt like she was going to die.  Significantly, Margerum's conduct here was prolonged.  It was not an attack that took place in an instant, such as a single blow.  The attack only stopped when T.M. hit Margerum on the head with a candleholder.  T.M. testified that when Margerum was choking her, "her throat hurt really bad."  T.M. also testified that Margerum punched her in the face "maybe three or four" times, which "hurt very badly."  Therefore, the record establishes that Margerum knowingly caused bodily injury to T.M., thereby committing assault.  Furthermore, the record supports that Margerum knowingly placed T.M. in a prolonged chokehold that demonstrated his intent to place her in fear of serious bodily injury, thereby committing menacing.  Chokeholds can be lethal, and the fact that T.M. experienced dizziness demonstrates that Margerum applied his hold in a manner and for a length of time that could have caused T.M. to fear for her life.  Indeed, although subjective fear is not required for an act to constitute felony menacing, it is relevant to the analysis and T.M. testified to that very fear. *See, e.g.*, *Shawn*, 107 P.3d at 1035 (explaining that, while the proper focus is "on the intent and conduct of the actor," "'what the victim saw or heard' . . . is relevant to determining the defendant's intent" (quoting *People v. Saltray*, 969 P.2d

729, 732 (Colo. App. 1998)).  T.M. testified that while Margerum was choking her, she thought that she was going to die.  Accordingly, the facts demonstrate both that Margerum knowingly inflicted a bodily injury on T.M., and, simultaneously, knowingly placed her in fear of serious bodily injury because his conduct was prolonged, thus supporting convictions for both assault and menacing.

## IV.  Conclusion

¶35  We conclude that a witness's probationary status is relevant when the witness testifies for the State because the witness is in a vulnerable position with the State.  Here, however, the trial court's error in disallowing the impeachment inquiry was harmless based on the weak connection between the witness's probation and her potential motive for testifying, as well as the existence of corroboration.  Separately, we conclude that under the circumstances of this case, Margerum was properly convicted of both assault and menacing based on the same conduct because the facts here support both convictions.  Therefore, we affirm the judgment of the court of appeals on different grounds.